1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

9

\* \* \*

10
11
12
13
14
15
16

CHRISTI T. MORRELL,

              Plaintiff,

   v.

ANDREW SAUL,* Acting Commissioner of
Social Security,

              Defendant.

Case No. 2:19-cv-00765-JCM-BNW

**REPORT AND RECOMMENDATION**

17

      This case involves review of an administrative action by the Commissioner of Social

18

Security denying Plaintiff Christi T. Morrell's application for disability insurance benefits and

19

supplemental security income under Titles II and XVI of the Social Security Act, respectively.[1]

20

The Court reviewed Plaintiff's motion to remand (ECF No. 15), filed March 23, 2020, and the

21

Commissioner's countermotion to affirm and response to Plaintiff's motion to remand (ECF Nos.

22

18, 19), filed May 19, 2020. Plaintiff did not file a reply. This matter was referred to the

23
24
25
26
27
28

---

     * Andrew Saul has been substituted for his predecessor in office, Nancy A. Berryhill, pursuant to
Federal Rule of Civil Procedure 25(d).

     [1] Title II of the Social Security Act provides benefits to disabled individuals who are insured by
virtue of working and paying Federal Insurance Contributions Act (FICA) taxes for a certain amount of
time. Title XVI of the Social Security Act is a needs-based program funded by general tax revenues
designed to help disabled individuals who have low or no income. Although each program is governed by
a separate set of regulations, the regulations governing disability determinations are substantially the same
for both programs. *Compare* 20 C.F.R. §§ 404.1501–1599 (governing disability determinations under Title
II) *with* 20 C.F.R. §§ 416.901–999d (governing disability determinations under Title XVI).

undersigned magistrate judge on May 6, 2019 for a report of findings and recommendations under 28 U.S.C. § 636(b)(1)(B)–(C) and Local Rule IB 1–4. For the reasons stated below, the Court recommends that Plaintiff's motion to remand (ECF No. 15) be denied.

## I.    BACKGROUND

### 1.    Procedural History

On October 4, 2013, Plaintiff applied for disability insurance benefits under Title II of the Act, alleging an onset date of April 3, 2012. AR[2] 851–52. On October 7, 2013, Plaintiff applied for supplemental security income under Title XVI of the Act, also alleging an onset date of April 3, 2012. AR 853–61. Her claim was denied initially and on reconsideration. AR 706–13; 716–27. A hearing was held before an Administrative Law Judge ("ALJ") on October 5, 2015. AR 539–54. On November 23, 2015, the ALJ issued a decision finding that Plaintiff was not disabled. AR 683–94.

The Appeals Council granted Plaintiff's request for review on March 31, 2017. AR 700–03. A new hearing was held before a different ALJ on December 15, 2017. AR 555–82. On August 9, 2018, the ALJ issued a decision finding that Plaintiff was not disabled. AR 166–81. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied review on February 28, 2019. AR 1–7. Plaintiff, on May 3, 2019, timely commenced this action for judicial review under 42 U.S.C. § 405(g). (*See* IFP App. (ECF No. 1).)

## II.    DISCUSSION

### 1.    Standard of Review

Administrative decisions in social security disability benefits cases are reviewed under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides: "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which [s]he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter "upon the pleadings and

---

[2] AR refers to the Administrative Record in this matter. (Notice of Manual Filing (ECF No. 10).)

1    transcripts of the record, a judgment affirming, modifying, or reversing the decision of the

2    Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

3        The Commissioner's findings of fact are conclusive if supported by substantial evidence.

4    *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the

5    Commissioner's findings may be set aside if they are based on legal error or not supported by

6    substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006);

7    *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial

8    evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence

9    as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53

10   F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir.

11   2005). In determining whether the Commissioner's findings are supported by substantial

12   evidence, the court "must review the administrative record as a whole, weighing both the

13   evidence that supports and the evidence that detracts from the Commissioner's conclusion."

14   *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273,

15   1279 (9th Cir. 1996).

16       Under the substantial evidence test, findings must be upheld if supported by inferences

17   reasonably drawn from the record. *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004).

18   When the evidence will support more than one rational interpretation, the court must defer to the

19   Commissioner's interpretation.  *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten

20   v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue

21   before the court is not whether the Commissioner could reasonably have reached a different

22   conclusion, but whether the final decision is supported by substantial evidence.

23       It is also incumbent on the ALJ to make specific findings so that the court does not

24   speculate as to the basis of the findings when determining if the Commissioner's decision is

25   supported by substantial evidence. Mere cursory findings of fact without explicit statements as to

26   what portions of the evidence were accepted or rejected are not sufficient. *Lewin v. Schweiker*,

27   654 F.2d 631, 634 (9th Cir. 1981). The ALJ's findings "should be as comprehensive and

28

analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.*

### 2.    Disability Evaluation Process

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that he can make a finding of disability or non-disability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. *Id.* § 404.1572(a)–(b). If the individual is engaged in SGA, then a finding of not disabled is made. If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. *Id.* § 404.1520(c). An impairment or combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work.

*Id.* § 404.1521; *see also* Social Security Rulings ("SSRs") 85-28, 96-3p, and 96-4p.[3] If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If the individual's impairment or combination of impairments meets or equals the criteria of a listing and the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made. 20 C.F.R. § 404.1520(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

Before moving to step four, however, the ALJ must first determine the individual's residual functional capacity ("RFC"), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1520(e); *see also* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529; *see also* SSRs 96-4p and 96-7p. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

---

[3] SSRs constitute the SSA's official interpretation of the statute and regulations. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1). They are "entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations." *Bray*, 554 F.3d at 1224 (citations omitted) (finding that the ALJ erred in disregarding SSR 82-41).

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. § 404.1520(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years before the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed a SGA. 20 C.F.R. §§ 404.1560(b) and 404.1565. If the individual has the RFC to perform her past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). If she is able to do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the economy that the individual can do. *Yuckert*, 482 U.S. at 141–42.

Here, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. AR 172–80.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 3, 2012. AR 172.

At step two, the ALJ found that Plaintiff had the following medically determinable "severe" impairments: bipolar disorder, cervical degenerative disc disease, status post cervical spine fusion, and lumbar degenerative disc disease. *Id*. The ALJ found her asthma, anxiety disorder, and history of substance abuse to be "non-severe." *Id*. Additionally, the ALJ found that Plaintiff's history of substance abuse was not an "issue of materiality, as she is not found disabled." *Id*.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 172–74.

Before moving to step four, the ALJ also found that Plaintiff had the residual functional capacity to perform light work with the following exceptions: She can sit for 6 hours in an 8-hour day; she can lift or carry 10 pounds frequently; she can lift or carry 20 pounds occasionally; she can perform work with simple repetitive tasks with a reasoning level of 2 to 3; and she can occasionally interact with the public. AR 174–79.

At step four, the ALJ found that Plaintiff cannot perform any past relevant work. AR 179.

At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and found that there are jobs that exist in significant numbers in the national economy that she can perform. AR 179–80. Specifically, the ALJ found that Plaintiff can work as an assembler, mail clerk, or office helper. AR 180. Accordingly, the ALJ concluded that Plaintiff was not under a disability at any time from April 3, 2012 through August 9, 2018, the date of the ALJ's decision. AR 180–81.

### 3.   Analysis

#### a. Whether the ALJ properly weighed opinion evidence

##### i. The parties' arguments

Plaintiff moves to remand this matter because she argues that the ALJ did not provide either "clear and convincing" or "even specific and legitimate" reasons for discounting the opinion of the treating physician, Eugene Rosenman, M.D., as it related to Plaintiff's bipolar disorder limitations. ECF No. 15 at 10. Specifically, Plaintiff argues that "[c]ontrary to the ALJ's assertions, the treatment record is entirely consistent with Dr. Rosenman's opinion" as evidenced by Plaintiff's "years of intensive therapy, hospitalizations, and trials of multiple types of medications" that have not stopped her "episodes of anxiety and panic, insomnia, and persistent suicidal and intrusive thoughts." *Id*. at 9. Plaintiff concedes that the treating physician did use "the old version of the 'B' criteria [form] in assessing Plaintiff's limitations[,]" but argues that "the limitations [Dr. Rosenman] described also easily satisfy the new 'B' criteria." *Id*.

The Commissioner responds that "the ALJ's discounting of Dr. Rosenman's opinion was reasonable and supported by substantial evidence." ECF No. 18 at 14. He argues that because the doctor's opinion was contradicted by state agency doctors, the ALJ was required to provide only

1    "specific and legitimate" reasons (rather than the more burdensome standard of "clear and

2    convincing" reasons) for discounting the treating physician's opinion. *Id*. at 14–15. The

3    Commissioner also argues that Plaintiff waived this argument because she "failed to raise a

4    competent challenge in her motion to the ALJ's evaluation of Dr. Rosenman's opinion, which she

5    only raises as part of her step three argument." *Id*. at 18.

6    ### ii. Dr. Rosenman's opinion

7    On December 14, 2017, Dr. Rosenman completed a Mental Impairment Questionnaire.

8    AR 2518. The Questionnaire provides that he began treating Plaintiff on a monthly basis on June

9    21, 2017.[4] AR 2513. Dr. Rosenman opined that Plaintiff suffered from Bipolar Disorder, Type I

10   and experienced a "partial response" to treatment. *Id*. According to his clinical findings, "The

11   patient continues [to] experience sadness, severe anxiety, memory impairment, difficulties

12   focusing [and] concentrating[.]" *Id*. Dr. Rosenman opined that Plaintiff had marked limitations in

13   activities of daily living, and extreme limitations in maintaining social functioning; maintaining

14   concentration, persistence, or pace; and episodes of decompensation within a 12-month period,

15   with each lasting at least two weeks. AR 2517. Finally, he opined that Plaintiff was not a

16   malingerer, and she would miss more than four days of work per month. AR 2518.

17   ### iii. The ALJ's decision

18   The ALJ summarized Dr. Rosenman's opinion as follows:

19
20   > On December 14, 2017, Dr. Rosenman believed that the claimant has serious
>    limitations in mental functioning. He said that she has marked restriction in
21   > activities of daily living and extreme limitations in maintaining social functioning,
>    and maintaining concentration, persistence, or pace. Lastly, he opined the claimant
22   > would be absent more than four days per month due to impairments or treatment.

23   AR 178. The ALJ then cited three reasons for giving "little weight" to Dr. Rosenman's opinion:

24   (1) Dr. Rosenman's opinion was "not substantiated by treatment[,]" (2) the doctor used "the

25   outdated 'B' criteria form to evaluate" Plaintiff's mental impairments, and (3) the "extreme"

26
27   ───────────

[4] The record indicates that Dr. Rosenman was Plaintiff's attending physician during several of her hospitalizations in 2017 and 2018. *See* AR 271 (October 17, 2016 – October 26, 2017), 268 (February 6,
28   2018 – February 11, 2018), and AR 265 (May 31, 2018 – June 8, 2018).

1    opinion was not "supported by the evidence of the record" because Plaintiff had normal mental

2    status examinations ("MSEs") when she was compliant with treatment. *Id*.

3    ### iv. Whether the ALJ provided "specific and legitimate" reasons
     for discounting the opinion of treating physician Dr. Rosenman

4    The Ninth Circuit classifies medical opinions into three hierarchical categories: (1)

5    treating physicians (i.e., those who treat the plaintiff), (2) examining physicians (i.e., those who

6    examine, but do not treat the plaintiff), and (3) non-examining physicians (i.e., those who do not

7    treat or examine the plaintiff).[5] *Lester v. Chater*, 81 F.3d 821, 830. "Because treating physicians

8    are employed to cure and thus have a greater opportunity to know and observe the patient as an

9    individual, their opinions are given greater weight than the opinions of other physicians." *Smolen*

10   *v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *see also Holohan v. Massanari*, 246 F.3d 1195,

11   1202 (9th Cir. 2008) ("Generally, a treating physician's opinion carries more weight than an

12   examining physician's, and an examining physician's opinion carries more weight than a

13   reviewing physician's.").

14   An ALJ may reject a treating physician's uncontradicted opinion by providing "clear and

15   convincing" reasons supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 675

16   (9th Cir. 2017). If, however, a treating physician's opinion is contradicted, the ALJ may only

17   reject it with "specific and legitimate" reasons supported by substantial evidence in the record.

18   *Orn v. Astrue*, 495 F.3d 625, 628 (9th Cir. 2007). This is to mean that the ALJ "'must do more

19   than offer his conclusions; he must set forth his own interpretations and explain why they, rather,

20   than the doctor['s], are correct.'" *Belanger v. Berryhill*, 685 F. App'x 596, 598 (9th Cir. 2017).

21

22
23          [5] The SSA changed the framework for how an ALJ must evaluate medical opinion evidence for
     claims filed on or after March 27, 2017. *Revisions to Rules Regarding the Evaluation of Medical Evidence*,
24   2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. The new
     regulations provide that the ALJ will no longer "give any specific evidentiary weight . . . to any medical
25   opinion(s) . . . ." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R.
     §§ 404.1520c(a), 416.920c(a). Here, Plaintiff applied for Title II and XVI benefits on October 4, 2013 and
26   October 7, 2013, respectively. AR 851–52; 853–61. This would, therefore, make the old regulations
     discussed above applicable to Plaintiff's claims. 20 C.F.R. § 404.1520c ("For claims filed before March
27   27, 2017, the rules in § 404.1527 apply.").

28

1  This is a necessary step so that the reviewing court does not speculate as to the basis of the
2  findings when determining whether substantial evidence supports the ALJ's decision.

3      Here, Plaintiff wavers between what standard is applicable. She first states that the ALJ's
4  cited reasons for rejecting Dr. Rosenman's opinion were not "clear and convincing or even
5  specific and legitimate[.]" ECF No. 15 at 10. But she later concludes that "[b]ecause the ALJ
6  improperly rejected Dr. Rosenman's opinion in the absence of clear and convincing reasons for
7  doing so, this Court should reverse the ALJ's decision." *Id*. But as the Commissioner correctly
8  points out, the applicable standard is not "clear and convincing" but "specific and legitimate."
9  ECF No. 18 at 12–13. This is because Dr. Rosenman, despite being a treating physician, provided
10  an opinion that was contradicted by non-examining state doctors.

11      As discussed below, the ALJ erred because two of his proffered reasons for discounting
12  Dr. Rosenman's opinion were not "specific and legitimate." But because the ALJ's third
13  proffered reason was "specific and legitimate," the error is harmless. *See Molina v. Astrue*, 674
14  F.3d 1104, 1115 (9th Cir. 2012) (an error is harmless where it is "inconsequential to the ultimate
15  nondisability determination"); *Monta v. Saul*, 776 F. App'x 473, 474 (9th Cir. 2019) (an ALJ's
16  erroneous reasoning in rejecting a medical opinion was harmless when other reasons were
17  "specific and legitimate").

18      The Court will discuss each cited reason in turn.

19      First, the ALJ stated that he was giving Dr. Rosenman's opinion little weight because the
20  opinion was "not substantiated by treatment." AR 178. This, however, is a conclusory statement
21  that fails to meet the ALJ's burden of "setting out a detailed and thorough summary of the facts
22  and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Trevizo*,
23  871 F.3d at 675 (internal citations omitted). Although the ALJ could have properly discounted Dr.
24  Rosenman's opinion on this ground, he did not explain this finding or tie it to the administrative
25  record. Put another way, the ALJ failed to identify *how* Dr. Rosenman's opinion was not
26  substantiated by treatment. For example, it is unclear to the Court what the ALJ is referring to
27  when he states "treatment." Is he referring to Plaintiff's longitudinal treatment that the ALJ
28  addresses when discussing Plaintiff's pain and symptom testimony, Dr. Rosenman's

1   recommended treatment for Plaintiff, other medical providers' recommended treatment for

2   Plaintiff, or Plaintiff's (non)compliance with recommended treatment? As Plaintiff argues, "The

3   record shows that even after years of intensive therapy, hospitalizations, and trials of multiple

4   types of medications, Plaintiff continues to have episodes of anxiety and panic, insomnia, and

5   persistent suicidal and intrusive thoughts." ECF No. 15 at 9 (citing AR 2489–95). Based on the

6   expansive record and without the ALJ offering more than his stated conclusion, the Court cannot

7   meaningfully review whether the ALJ's interpretation of the evidence, rather than Dr.

8   Rosenman's opinion, is legitimate. *See Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988)

9   (requiring the ALJ to identify the evidence supporting the alleged conflict to permit the court to

10   meaningfully review the ALJ's finding); *Ogin v. Colvin*, 608 F. App'x 519, 520 (9th Cir. 2015)

11   (holding that the ALJ did not offer "specific and legitimate" reasons to discount physician's

12   opinion because the ALJ "never specified which findings in which treating records she was

13   relying on").

14       In short, the Court does not know and cannot infer what aspects of Plaintiff's treatment do

15   not substantiate Dr. Rosenman's opinion. The Commissioner seeks to fill in these gaps. *See, e.g.,*

16   ECF No. 18 at 16. But the Court is bound to affirm an ALJ's decision based only on a ground the

17   ALJ invoked. *See Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to

18   review the reasons the ALJ asserts."); *Orn*, 495 F.3d at 630. Therefore, because the ALJ failed to

19   specify how Dr. Rosenman's opinion was unsubstantiated by treatment, the Court finds that the

20   ALJ erred. *See Jarvis v. Berryhill*, 722 F. App'x 616, 618 (9th Cir. 2018) ("An ALJ errs when he

21   rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it,

22   asserting without explanation that another medical opinion is more persuasive, or criticizing it

23   with boilerplate language that fails to offer a substantive basis for his conclusion.").

24       The ALJ next stated that he gave Dr. Rosenman's opinion little weight because the doctor

25   used "the outdated 'B' criteria form to evaluate the claimant's mental impairments." AR 178. The

26   Commissioner argues that Plaintiff waived this argument because she did not develop or "identify

27

28

1    any supporting documentation or evidence to substantiate the paragraph B findings . . . ."[6] ECF

2    No. 18 at 17. But the Commissioner appears to misunderstand the ALJ's finding and Plaintiff's

3    argument. The ALJ discounted Dr. Rosenman's opinion because he used an "outdated 'B' criteria

4    form to evaluate the claimant's mental impairments." AR 178. But the ALJ did not expound on

5    this reason. For example, he did not explain how the use of an "outdated" form invalidated Dr.

6    Rosenman's opinion. It is this point that Plaintiff appears to argue when she acknowledges that

7    the doctor did use the "old version" of the form, but adds that "the limitations [Dr. Rosenman]

8    described also easily satisfy the new 'B' criteria . . . ." ECF No. 15 at 9.

9            The Court agrees with Plaintiff that the ALJ erred in rejecting Dr. Rosenman's opinion

10   because he used an outdated form. There does not appear to be any controlling Ninth Circuit

11   authority on whether an ALJ may reject a doctor's opinion based solely on the use of an outdated

12   form. (The parties have not cited any, and the Court has not found any either.) In light of this lack

13   of authority, the Court concludes that noting that a doctor used an outdated form, without more, is

14   not a legitimate reason to discount a doctor's opinion. As Plaintiff points out, the limitations the

15   doctor described on an outdated form very well may satisfy the criteria of the current form. Thus,

16   rejecting a doctor's opinion solely on the ground that he used an outdated form seems somewhat

17   arbitrary and unhelpful in determining if the plaintiff is disabled.[7] Here, because the Court is

18   bound to affirm an ALJ's decision based only on a ground that the ALJ invoked (*see Orn*, 495

19   F.3d at 630; *Stout*, 454 F.3d at 1054), and the ALJ rejected Dr. Roseman's opinion based on the

20

21   _____

22       [6] The Commissioner seems to imply that the ALJ was correct to discount Dr. Rosenman's opinion
     on grounds that the doctor's use of the form resulted in an inadequately supported opinion. ECF No. 18 at

23   17. But the ALJ did not address this point in his one-sentence discussion on the doctor's use of "the
     outdated 'B' criteria form[.]" AR 178. Rather, the ALJ simply stated that "[t]he provider used the outdated

24   'B' criteria form to evaluate the claimant's mental impairments." *Id.* He then discussed the third and final
     reason for discounting the treating physician's opinion. *Id.*

25       [7] The Ninth Circuit holds that "there is no authority that a 'check-the-box' form is any less reliable
     than any other type of form[.]" *Trevizo*, 871 F.3d at 677 n.4. The Ninth Circuit also holds that a treating

26   physician's use of a "check-the-box" form should not be discredited on that basis alone. *Garrison v.
     Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014). The Court finds these holdings instructive to the instant matter

27   in that they guide the reviewing court to look past the form to consider the substance of the doctor's
     opinion.

28

fact that he used an outdated form (without further explanation regarding why this was a legitimate reason to reject his opinion), the ALJ erred.

Finally, the ALJ stated that he assigned Dr. Rosenman's opinion little weight because it was "not supported by the evidence of the record." AR 178. He added, "Specifically, treatment notes routinely show that when compliant with treatment, the claimant has normal mental status examination findings" and cites to six progress notes relating to individual and group counseling sessions at Southern Nevada Adult Mental Health Services, two treatment notes from HealthCare Partners Medical Group relating to neck pain and a thumb injury, and a discharge summary following Plaintiff's hospitalization at Valley Hospital Medical Center Behavior Health from August 16–23, 2015. AR 178.

The Court reviewed these records and finds that these reasons for rejecting Dr. Rosenman's opinion are specific and legitimate.[8] *See Batson*, 359 F.3d at 1195 (noting that an ALJ may reject a treating physician's opinion if it is unsupported by the record as a whole).

In sum, although the ALJ cited two reasons for discounting Dr. Rosenman's opinion that were not "specific and legitimate," because his third stated reason was, in fact, "specific and legitimate," the ALJ's error was harmless. *See Monta*, 776 F. App'x at 474 (noting that an ALJ's erroneous reasoning in rejecting a medical opinion was harmless when other reasons were "specific and legitimate"). Accordingly, the Court must affirm the ALJ's decision to assign little weight to Dr. Rosenman's opinion. *See Stout*, 454 F.3d at 1055–56 (a court may not reverse an ALJ's decision on account of a harmless error).

**b.    Whether the ALJ erred in finding that Plaintiff's bipolar disorder did not meet or equal Listing 12.04**

**i. The parties' arguments**

Plaintiff next argues that the ALJ erred by not finding that Plaintiff's mental impairments met or equaled Listing 12.04. ECF No. 15 at 7. This is because treatment records and Dr. Rosenman's opinion "establish that Plaintiff's bipolar disorder meets the requirements" of Listing

---

[8] Although the Court may interpret Plaintiff's MSEs in a way that is more favorable to Plaintiff, where evidence before the ALJ is subject to more than one rational interpretation, as it is here, the ALJ's finding must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041).

12.04. *Id.* Plaintiff also argues that the ALJ "did not discuss or articulate a proper rationale for finding that [her] impairments did not equal Listing 12.04." *Id.* at 10.

The Commissioner responds that Plaintiff did not meet her "burden to prove that she had a medical condition that met or equaled a Listing . . . ." ECF No. 18 at 6. He argues that "the ALJ explicitly considered whether Plaintiff met or equaled Listing § 12.04, but found that she did not satisfy the paragraph B criteria of the Listing." *Id.* at 8. The Commissioner notes that Plaintiff did not argue and, therefore, waived the argument that the ALJ erred with respect to finding that she met Listing 12.04 under the paragraph C criteria.[9] *Id.*

### ii. The ALJ's decision

The ALJ found that the "severity of the claimant's mental impairment does not meet or medically equal the criteria of listings 12.04 and 12.06" under either the paragraph B or C criteria. AR 173–74.

With respect to paragraph B criteria, the ALJ found that Plaintiff's impairments cause no limitation in adapting or managing oneself; moderate limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; and mild limitation in concentrating, persisting, or maintaining pace. *Id.* The ALJ explained that "[b]ecause the claimant's mental impairment does not cause at least two 'marked' limitations or one 'extreme' limitation, the 'paragraph B' criteria are not satisfied." AR 174.

### iii. Whether the ALJ erred in finding that Plaintiff's bipolar disorder did not meet or equal Listing 12.04

The Listings in 20 C.F.R. Part 404, Subpart P, Appendix I are "descriptions of various physical and mental illnesses and abnormalities" which are sorted by the body system each affects. *Sullivan v. Zebley*, 493 U.S. 521, 529-30 (1990). Listing 12.04 describes depressive, bipolar, and related disorders. A claimant may establish *per se* disability under Listing 12.04 if she provides medical documentation of the disorder and satisfies either paragraph B or C criteria. *See Lester*, 81 F.3d at 828–29 (explaining what is needed to meet the Listings' requirement).

---

[9] Plaintiff does not argue that the ALJ erred with respect to finding Plaintiff's bipolar disorder did not meet paragraph C criteria. Accordingly, the Court will not reach this issue.

Paragraph B criteria requires that the plaintiff prove that she has extreme limitation in one or marked limitation in two of the four listed areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.04.

At step three of the disability analysis, the claimant has the burden of proving that her impairments meet or medically equal a listed impairment. *Burch*, 400 F.3d at 683. If a claimant meets a listing, the claimant is disabled. *See* 20 C.F.R. § 404.1520(d) ("If you have an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairments(s), [the Commissioner] will find you disabled without considering your age, education, and work experience."). The ALJ "must evaluate the relevant evidence" when determining whether a claimant meets the listing requirements and avoid a "boilerplate finding . . . to support [the] conclusion." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (citing *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990)). In fact, his step-three evaluation must be supported by substantial evidence in the record. *See Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Smolen*, 80 F.3d at 1279. Finally, the ALJ's determination is entitled to deference if it is supported by substantial evidence. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995).

Here, Plaintiff argues that the ALJ ignored evidence (i.e., Dr. Rosenman's opinion) that she says demonstrates "marked restriction in carrying out her activities of daily living and extreme restrictions in maintaining social functioning and in maintaining concentration, persistence, and pace." ECF No. 15 at 9. It appears that Plaintiff's only argument is that if the ALJ had credited Dr. Rosenman's opinion, then he would have found that she is disabled because she met or equaled Listing 12.04. But because the Court already found that the ALJ committed harmless errors with respect to the weighing of Dr. Rosenman's opinion, it does not find that the ALJ committed an error at step three.

Plaintiff does write that the ALJ "did not discuss or articulate a proper rationale for finding that [her] impairments did not equal Listing 12.04." *Id*. at 10. But she does not develop this argument. *Id*. Notably, Plaintiff neither argues that the ALJ's step-three finding is not supported by substantial evidence in the record nor provides any evidence—other than Dr.

Rosenman's opinion—to counter the ALJ's finding. Further, Plaintiff does not address the reasons that the ALJ gave in assigning no, mild, or moderate limitations for the four respective areas of functioning. Accordingly, Plaintiff did not meet her burden to show how the ALJ erred in finding that Plaintiff's bipolar disorder did not meet or equal Listing 12.04. *See Burch*, 400 F.3d at 683 (noting that the claimant bears the burden of establishing that she meets a Listing).

### c. Whether the ALJ provided "specific, clear, and convincing" reasons for discounting Plaintiff's pain and symptom testimony

#### i. The parties' arguments

Plaintiff next argues that "[t]he ALJ improperly rejected Plaintiff's pain and symptom testimony." ECF No. 15 at 11. She argues that because the ALJ did not find that Plaintiff was malingering, he had to provide "specific, clear, and convincing" reasons to reject her testimony, and he did not. *Id*. at 11–13.

The Commissioner responds that the ALJ "provided sufficient reasons for discounting [Plaintiff's] statements regarding the intensity, persistence, and limiting effects of her symptoms[.]" ECF No. 18 at 18 (citing AR 175–79).

#### ii. The ALJ's decision

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms not "entirely consistent" with the medical evidence and other evidence in the record and, therefore, not entirely credible. AR 175. The ALJ specifically found that (1) Plaintiff's symptoms are "exacerbate[ed] . . . due to [a] failure to comply with prescribed treatment and situational triggers[;]" (2) during periods of "medical compliance, mental status examinations reveal benign findings[;]" (3) Plaintiff's treatment for her mental health impairments "has been routine and beneficial[;]" (4) Plaintiff's activities of daily living require "physical and mental capabilities . . . as well as social interactions" needed to obtain and maintain employment; and (5) Plaintiff's "work activity after the alleged onset date is inconsistent with her allegations." AR 176–78.

### iii. Whether the ALJ provided "specific, clear, and convincing" reasons for discounting Plaintiff's pain and symptom testimony

An ALJ engages in a two-step analysis to determine whether a plaintiff's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112) (internal quotation marks omitted). "The claimant is not required to show that her impairment 'could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citations omitted).

Second, "[i]f the [plaintiff] meets the first test and there is no evidence of malingering, the ALJ can only reject the [plaintiff's] testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the [plaintiff's] complaints." *Id.* (quoting *Lester*, 81 F.3d at 834); *Thomas*, 278 F.3d at 958 ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the plaintiff's] testimony.")). The Ninth Circuit has recognized the clear and convincing evidence standard to be "the most demanding required in Social Security cases" and "not an easy requirement to meet." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)); *Trevizo,* 871 F.3d at 678. An ALJ's failure to provide "specific, clear, and convincing reasons" for rejecting a plaintiff's pain and symptom testimony constitutes legal error that is not harmless because it precludes the Court from conducting a meaningful review of the ALJ's reasoning and ensuring that the plaintiff's testimony is not rejected arbitrarily. *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015).

In making an adverse credibility determination, the ALJ may consider, among other factors, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's

testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958–59.

Here, as noted above, the ALJ found that Plaintiff's pain and symptom testimony was not entirely credible for several reasons. AR 175–78. One of these reasons was that Plaintiff's activities of daily living "belie[d]" her allegations. AR 177–78. Specifically, the ALJ found that Plaintiff's ability to "go on walks, look for jobs, and work out a gym[;]" "take care of her needs and her home[;]" travel to Houston; "travel to Utah to care for her ill mother[;]" plan to relocate to Houston; and plan to start nursing school conflicted with her allegations that "she has difficulty leaving her home, caring for herself, and performing activities of daily living because of her mental symptoms" and that the medication side effects, which include "dizziness, nausea, constipation, and diarrhea[,]" impact Plaintiff's "ability to function." AR 175, 177–78. The ALJ also stated that Plaintiff's activities of daily living require the same "physical and mental capabilities" and "social interactions" required for "obtaining and maintaining employment." *Id*.

Plaintiff argues that the "Social Security Act does not require that disability claimants be totally unable to engage in any form of mental or physical activity." ECF No. 15 at 13 (citing *Fair*, 885 F.2d at 597). Rather, she states that the "issue here is whether Plaintiff can *sustain* activity for a full work day and work week[,]" and "[t]he record establishes that she cannot." *Id*. (emphasis in original). Plaintiff further argues that her "ability to go for a walk or go on vacation on one occasion does not demonstrate that Plaintiff can sustain work activity." *Id*. It appears that Plaintiff, as the Commissioner points out, does not dispute that she can perform the activities of daily living that the ALJ cited to. *See id*.; ECF No. 18 at 24.

The Commissioner responds that "the ALJ's discussion [on Plaintiff's activities of daily living] touched upon much more than a walk or one vacation." ECF No. 18 at 24. He explains that the ALJ's description of Plaintiff's activities of daily living contradicted her testimony, including "that she could not take care of herself, perform day-to-day things, and could not even get out of bed/get ready[.]" *Id*. (citing AR 562, 570).

It is true that a plaintiff does not need to be totally incapacitated to be found disabled. *Taylor v. Commissioner of Social Sec. Admin.,* 659 F.3d 1228, 1235 (9th Cir. 2011); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). In fact, a plaintiff can be found disabled even if she is able to perform some activities of daily living. *See Garrison,* 759 F.3d at 1016. Yet it is also true that "the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting[.]" *Molina*, 674 F.3d at 1112–13 (citations omitted). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id*. (citations omitted).

Accordingly, because the ALJ found that Plaintiff's activities of daily living contradicted her pain and symptom testimony, and this finding is supported by substantial evidence, the Court must affirm the ALJ's finding. This is because the ALJ provided a "specific, clear, and convincing" reason that Plaintiff's activities, including respective trips to Houston and Utah, undermined her claim that she has difficulty leaving her home or caring for herself. *See id.* (finding that the "ALJ could reasonably conclude that [the plaintiff's] activities, including walking her two grandchildren to and from school, attending church, shopping, and taking walks, undermined her claims that she was incapable of being around people without suffering from debilitating panic attacks."); *see also Tommasetti*, 533 F.3d at 1038 (holding that the court will not reverse the ALJ's decision "when the evidence is susceptible to more than one rational interpretation").

Finally, although the Court finds that the ALJ erred with respect to the other reasons he cited for discounting Plaintiff's pain and symptom testimony, it does not reach those issues here. This is because the error is harmless. *See Batson,* 359 F.3d at 1197 (holding that where one of an ALJ's several reasons supporting an adverse credibility finding is held invalid, the error is harmless if it "does not negate the validity of the ALJ's ultimate conclusion that [the claimant's] testimony] was not credible"); *Carmickle*, 533 F.3d at 1163 (upholding an adverse credibility

1  finding where the ALJ provided four reasons to discredit the claimant, two of which were
2  invalid).

3  **d.  Whether the ALJ erred in finding that Plaintiff could work as a mail clerk**

4  **i. The parties' arguments**

5  Plaintiff moves to remand on grounds that the ALJ erred in finding that she could work as
6  a mail clerk. ECF No. 15 at 13. She argues that the mail clerk position is inconsistent with the
7  ALJ's residual functional capacity ("RFC") that "limit[s] Plaintiff to simple, repetitive tasks." *Id*.
8  This is because the Dictionary of Occupational Titles ("DOT") provides that the mail clerk job
9  requires Level 3 Reasoning—a reasoning level that eliminates persons with a RFC to perform
10 simple, repetitive tasks. *Id*.

11 The Commissioner agrees with Plaintiff and concedes on this point. ECF No. 18 at 27. He,
12 however, argues that the error is harmless because the ALJ identified two other jobs—assembler
13 and office helper—that Plaintiff could perform. *Id*. The Commissioner adds that because
14 "Plaintiff does not challenge the ALJ's reliance on the other two jobs identified" and these jobs
15 have a reasoning level that comports with Plaintiff's RFC, there is no reversible error. *Id*.

16 **ii. The ALJ's decision**

17 The ALJ determined that Plaintiff has the RFC to perform light work with the following
18 limitations: She can frequently lift or carry 10 pounds; she can occasionally lift or carry 20
19 pounds; she can sit for 6 hours in an 8-hour workday; **she can perform simple, repetitive tasks**
20 **with a reasoning level of 2-to-3**; and she can occasionally interact with the public. AR 178. The
21 ALJ then considered Plaintiff's age, education, work experience, and RFC and found—with the
22 assistance of the vocational expert—that she could work as an assembler, mail clerk, or office
23 helper. AR 179–80.

24 **iii. Whether the ALJ erred in finding that Plaintiff could work as a**
25 **mail clerk**

26 The Ninth Circuit holds that "there is an apparent conflict between the residual functional
27 capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning." *Zavalin v.*
   *Colvin*, 778 F.3d 842, 847 (9th Cir. 2015). Here, the ALJ found that Plaintiff could perform
28

simple, repetitive tasks. Yet, he also found that she could work as a mail clerk—a position that, according to the DOT, requires Level 3 Reasoning. Accordingly, because the ALJ limited Plaintiff's RFC to simple, repetitive tasks, the ALJ erred in not reconciling the conflict with the DOT. *See Simpson v. Berryhill*, 717 F. App'x 670, 673 (9th Cir. 2017) (holding that the ALJ erred by finding that the plaintiff could work as a mail clerk despite a RFC restricting the plaintiff to simple, repetitive tasks).

The next question that the Court must consider is whether the ALJ's error constitutes harmless error. As the Commissioner correctly points out, Plaintiff does not challenge her ability to work as either an assembler or office helper. Nevertheless, these two positions require Level 2 Reasoning and, therefore, are consistent with a RFC limitation for simple, repetitive tasks. *See Hernandez v. Berryhill*, 707 F. App'x 456, 458 (9th Cir. 2017) (citations omitted) (holding that "[t]here was no apparent conflict between the ALJ's residual functional capacity . . . determination that [the plaintiff] was 'limited to simple, repetitive tasks' and the vocational expert's testimony that she could work as an envelope addresser, a job which the U.S. Department of Labor's *Dictionary of Occupational Titles* describes as requiring 'Level 2' reasoning"). Accordingly, the Court finds that the ALJ's error is harmless.

### e. Whether the ALJ provided the vocational expert an incomplete hypothetical

### i. The parties' arguments

Finally, Plaintiff argues that the hypothetical posed to the vocational expert ("VE") did not contain all of her limitations and, therefore, the VE's opinion lacks "evidentiary value." ECF No. 15 at 13–14. She argues that the ALJ's hypothetical "omitted Plaintiff's credible allegations" and "the limitations assessed by Plaintiff's treating doctor, Dr. Rosenman[.]" *Id*. at 14.

The Commissioner responds that Plaintiff's argument "should be rejected" because "the ALJ properly evaluated Dr. Rosenman's opinion and gave sufficient reasons for discounting both that opinion and Plaintiff's testimony." ECF No. 18 at 27–28.

### ii. The ALJ's decision

At the hearing on December 15, 2017, the ALJ provided the following hypothetical to the VE: "[A]n individual who could lift 20 pounds occasionally, 10 pounds frequently; this person can stand and walk up to 6 in 8; sit up to 6 in 8. This person would be relegated to simple repetitive tasks with a reasoning level of 2 to 3. And per the testimony of the claimant, this person would have only occasional contact with the public. Contact with coworkers and supervisors would be no limits [INAUDIBLE] DOK [PHONETIC]." AR 577.

### iii. Whether the ALJ provided the vocational expert an incomplete hypothetical

The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record and reflect all of a plaintiff's limitations. *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101; *see also Belanger*, 685 F. App'x at 601 (holding that the hypothetical an ALJ poses to a VE must incorporate all of a plaintiff's limitations as supported by the medical record).

Here, the hypothetical question contained all the limitations supported by the overall medical record, as reflected in the ALJ's RFC determination. *Compare* AR 21 *with* AR 174. Plaintiff did not specifically argue that the ALJ's RFC finding was not supported by substantial evidence. Thus, the ALJ's reliance on the VE's testimony in response to the hypothetical was proper. *See Thomas*, 278 F.3d at 959–60; *Magallanes v. Bowen*, 881 F.2d 747, 756–57 (9th Cir. 1989) (holding that it is proper for an ALJ to limit a hypothetical to restrictions supported by substantial evidence in the record).

## III.    CONCLUSION AND RECOMMENDATION

Accordingly, IT IS HEREBY RECOMMENDED that Plaintiff's motion to remand (ECF No. 15) be DENIED.

IT IS FURTHER RECOMMENDED that the Commissioner's cross-motion to affirm and response to Plaintiff's motion to remand (ECF No. 18) be GRANTED.

1    **IV.    NOTICE**

2           This report and recommendation is submitted to the United States district judge assigned

3    to this case under 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation

4    may file a written objection supported by points and authorities within fourteen days of being

5    served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely

6    objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153,

7    1157 (9th Cir. 1991).

8

9           DATED: August 18, 2020

10   _____

11   BRENDA WEKSLER
     UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28